**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FRANCISCO J. TOLEDO MÉNDEZ, *et al.*<br>*Plaintiffs*<br><br>v.<br><br>ANAIS RODRÍGUEZ VEGA; DAMARIS<br>MIRANDA MAISONAVE.<br>*Defendants* | CIVIL No. 24-1462 (RAM)<br><br><br><br>RE: Civil Rights |

## DEFENDANTS' MOTION TO DISMISS OR TRANSFER TO TITLE III COURT

TO THE HONORABLE COURT:

COME NOW codefendants *Anaís Rodríguez Vega* ("Rodríguez Vega") and *Damaris Miranda Maisonave* ("Miranda Maisonave"), in their personal capacities only, (the "Defendants"), and through the undersigned counsel very respectfully state and pray:

### I.    PREAMBLE

For the reasons and arguments that follow, Defendants move for the dismissal of the present case pursuant Fed. R. Civ. P. Rule 12(b)(6): (1) for failure to state a claim for which relief can be granted; and (2) among other defenses raised herein, Defendants are shielded from suit by qualified immunity. Codefendant Rodríguez Vega was the Secretary of the Puerto Rico Department of Natural and Environmental Resources ("DNER"), a branch of the Government of Puerto Rico, while codefendant Miranda Maisonave was the head of the DNER's human resources division at all times material to this complaint. [*See Complaint, Docket No 1 at ¶¶ 4-5*].

In the alternative, Defendants move the Court to transfer the present case to the Title

III Court presided by the United States District Judge Laura Taylor Swain[1] ("Judge Swain") for resolution consistent with the "Final Stipulation" approved by the Title III Court on <u>March 22, 2024</u>, (the "Final Stipulation") [*Exhibit 3*] filed in the adversary proceeding complaint *The Financial Oversight and Management Board for Puerto Rico v. Hon. Pedro Pierluisi Urrutia, et al*, <u>Adversary Proceeding No. 21-00119 in 17 BK 3283-LTS</u> (hereafter, the "adversary proceeding"), filed before the Title III Court (the "PROMESA" Court)[2] on December 20, 2021.

This final stipulation approved by Judge Swain in the adversary proceeding makes very clear that (1) the Plaintiffs in the present case have no right to early retirement under Act 80 [*see Exhibit 3 at 12, item VII*]; and (2) Judge Swain "retained subject matter jurisdiction to enforce the terms of this Final Stipulation and, upon its entry, the Final Order." [*Id. at 13, item XIII*]. Nevertheless, Plaintiffs chose to file the present complaint before this Court, instead of filing before the Title III Court, claiming that they are entitled to early retirement under Act 80. This, despite knowing that the Title III Court had already ruled otherwise, makes the present case a frivolous suit that attacks a sister court's order in the wrong court.

## II.    LEGAL STANDARD

When faced with a Fed.R.Civ.P. 12(b)(6) motion, the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. *See Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012) (citing *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Id.* While a complaint need not

---

[1] *See* USDC-PR case No. 24-1273-CVR, at Docket No. 30, "Opinion and Order" transferring that case to the Title III Court, with very similar allegations and defenses as the ones raised by the parties in the present complaint.

[2] PROMESA is codified at 48 U.S.C. § 2101 et seq. The uncodified version of the legislation is Public Law 114-187, titled the "Puerto Rico Oversight, Management, and Economic Stability Act".

need detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).  Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz,* 669 F.3d at 55. Plausible means something more than merely possible and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. *Id.* (citing *Iqbal,* 556 U.S. at 678–79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). "Even so, the tenet that a court must accept as true all the allegations contained in a complaint is 'inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Borras-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] —that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679.  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Ocasio–Hernández,* 640 F.3d at 12 (quoting *Iqbal,* 556 U.S. at 678).  "The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.).

### III.    ALLEGATIONS ACCORDING TO THE COMPLAINT

#### A.    Act 80

On August 3, 2020, Puerto Rico's General Assembly enacted Act No. 80-2020[3] to provide early retirement for certain qualifying government employees, including employees of the DNER, and some of its public corporations. [*Docket No. 1 at ¶ 6*]. The Act authorized qualifying employes to take early retirement with 50% of their salary at the time of retirement, as opposed to "38% or lower and having to wait until age 65." (*Id.*).

#### B.    The Adversary Proceeding No. 21-00119 in 17 BK 3283-LTS  before the Title III Court

On December 20, 2021, in the case *The Financial Oversight and Management Board for Puerto Rico v. Hon. Pedro Pierluisi Urrutia, et al*, Adversary Proceeding No. 21-00119 in 17 BK 3283-LTS, filed before the Title III Court, the Financial Oversight and Management Board for Puerto Rico ("FOMB") sued the Governor of Puerto Rico to prevent the implementation of Act 80. [*Id. at ¶ 7*]. Rather than litigate the claims, the FOMB and the Government sought a solution that would preserve Act 80's early retirement program for certain governmental employees while ensuring that the newly negotiated program was not significantly inconsistent with Puerto Rico's certified fiscal plan. As a result, the parties filed a **stipulation** [*Exhibit 1*], approved by the Title III Court on <u>December 28, 2021</u>, [*Docket No. 1 at ¶¶ 8-9*], that resolved the adversary proceeding and under which the parties would endeavor to agree "on a means of implementing the incentivized early retirement provisions set forth in Act 80 … where doing so would create a savings above and beyond the level of savings required under the currently certified fiscal plan" [*Id. at ¶ 9*]. The stipulation further provided that the parties must mutually agree on the proposed eliminated positions and, the

---

[3] "Act. No 80-2020" or "Act 80" is titled *Act to establish an Incentivized Retirement Program and do Justice to Our Public Employees*, 3 LPRA §§ 10011 et seq., (official translation).

eliminated positions "shall be eliminated from the Governmental system, … including any functionally similar position." [*Id. at ¶ 9(b) and (c)*]. The elimination of the positions must result in savings above and beyond the Baseline Savings. [*Id. at ¶ 9(b)*]. Because the positions to be eliminated under the stipulation "shall not be restored, recreated, or created within the affected agencies and corporations", any job position deemed essential for the operation of the affected agencies and corporations could not be eliminated, hence it could not participate in any early retirement program such as the one pretended in Act 80. [*See also Exhibit 1, in general*].

The Retirement Board of the Employees of the Government of Puerto Rico ("Retirement Board") and the Puerto Rico Office of Management and Budget Office ("OGP", for its Spanish acronym) issued two circular letters to the Government's agencies and public corporations—Circular Letter 2023-01 of the Retirement Board dated July 22, 2022 ("Letter 2023-01")[4] for the first phase of the implementation of Act 80, and Circular Letter 2024-2 of

---

[4] This circular letter was a joint procedural rule jointly issued by the Retirement Board and OGP. The reference number under OGP is Circular Letter 006-2022. However, for simplicity and clarity purposes, only the Retirement Board identification number will be used. Additionally, this Circular Letter is a matter of law which is of judicial notice. *See Lamar v. Micou*, 114 U.S. 218, 223 (1885) ("The law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."). Moreover, this Circular Letter was also referenced by Plaintiffs in the Complaint. The Supreme Court provided that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, **in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.** *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 US 308, 322 (2007) (emphasis ours). Likewise, the First Circuit, as well as other circuits, have welcomed this interpretation. *Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993)(recognizing "the narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim or for documents sufficiently referred to in the complaint")(quoting, e.g., *Romaní v. Shearson Lehman Hutton,* 929 F. 2d 875, 879 n. 3 (1st Cir. 1991) (other internal citations omitted).

the Board of Retirement, dated October 5, 2024, for the second phase of Act 80. [*Docket No. 1 at ¶ 10*]. These letters encompassed procedural rules seeking to update and gather information to reach an agreement with the FOMB. These letters further provided specific instructions to the agencies and public corporations as to the ways to gather information and forward the same to the corresponding agencies. The letters also informed management and the general public on the next steps in the negotiation process with the FOMB. **The Court should note that, while Plaintiffs conclusively allege that Defendants were the policy makers, they do not allege that any of the Defendants breached, or otherwise failed to comply, with any of these circular letters**.

C.    **The stipulation between FOMB and Government that resolved Adversary Proceeding 21-00119**

1.    **The Stipulation and Order invalidating Act 80**

As previously mentioned, in December 2021, the FOMB and the Government filed a stipulation, subsequently approved by the Title III Court [*Exhibit 1*], under which the parties would endeavor to agree "on a means of implementing the incentivized early retirement provisions set forth in Act 80 … where doing so would create a savings above and beyond the level of savings required under the currently certified fiscal plan"[*id. at ¶ 3*]. The stipulation, as approved, invalidated Act 80, stating that:

> 4. The Court's approval or 'SO ORDERING' of this agreement shall **invalidate** JR 33 and Acts 80, 81 and 82, pursuant to PROMESA, including as significantly inconsistent with the certified fiscal plan, as of the enactment date for each of JR 33 and Acts 80, 81 and 82, except as provided for in Section 3 of this agreement. (...)
> …
> 9. The Title III Court **shall retain subject matter jurisdiction** to enforce this agreement."

*Exhibit 1 at ¶¶ 4 and 9* (emphasis supplied).

On June 11, 2022, the FOMB and the Government filed with the Title III Court an

"<u>interim stipulation</u>" titled *Joint Informative Motion Concerning Acts 80, 81 and 82 of 2020 and Joint Resolution 33 of 2021 and Request for Enlargement of Time*. This joint motion was approved by the Title III Court on <u>June 15, 2022</u>, (the "Joint Informative Motion") [*Exhibit 2*]. In this motion, the FOMB and the Government stipulated and informed the Title III Court of their continued efforts to reach an agreement and requested an extension of time for the parties to reach an agreement [*Id. at 4, ¶ 9*]. The parties further expressed their desire to continue efforts and jointly requested that they be allowed to satisfy their respective obligations under paragraph 3 of the Stipulation [*see exhibit 1*]. During this extended period, additional deadlines were also stipulated:

> a. The Government shall finalize its list of **Proposed Eliminated -Positions** and analysis of the Savings and provide this information to the Oversight Board no later than June 21, 2022.
> b. If the Government satisfies the deadline in paragraph 11(a), above, the Oversight Board and the Government shall determine whether they agree on each of the items in paragraph 3(b) of the December 28, 2021 Stipulation and Order on or before 1:00 p.m. AST on July 14, 2022.

*Exhibit 2 at 5, ¶ 11* (emphasis supplied). This meant that by <u>June 2022</u>, the Government and the FOMB were still engaging in negotiations as to the proposed eliminated positions and the financial analysis required for any final stipulation, negotiations that would continue for several years.

On February 26, 2024, the FOMB and the Government filed the *Final Stipulation Concerning Act 80 of 2020 and Joint Resolution 33 of 2021* (the "Final Stipulation") [*Exhibit 3; Docket No. 59* in Case No. 21-00119-LTS], which was approved by the Title III Court on <u>March 22, 2024</u>. Pursuant to this approved Final Stipulation the parties agree as follows:

> Participation in the partial implementation of Act 80 is **solely and exclusively limited to Act 80 Entities' employees that are included in the final list of Eliminated Positions as accepted by the Oversight Board**. Non-participating employees of Act 80 Entities and all other Government employees **shall not have any right to participate in the partial implementation of Act**

**80**.

*Exhibit 3 at 12, item VII* (emphasis supplied).

Included and approved by the Title III Court as an exhibit to the final stipulation is a document labeled as "Exhibit A" [*Exhibit 4 of this MTD*], which comprises the initial list of the "Proposed Eliminated Positions", by agency or public corporation. (An amended and updated list was subsequently approved by  Jude Swain on January 28, 2025. [*See Exhibits 5 and 6*]). Still, however, all of the Plaintiffs' job positions remain excluded from the amended and updated list approved by the Title III Court.

Plaintiffs concede that their positions in the DNER are not included in Exhibit A of the Final Stipulation. [*See Docket No. 1 at ¶ 13*]. Moreover, the Final Stipulation provided that "[c]onsistent with the December 28 Order, the Government agrees that this Court shall retain subject matter jurisdiction to enforce the terms of this Final Stipulation and, upon its entry, the Final Order." [*Exhibit 3 at 13, item XIII*].

**D.    Plaintiffs' Claims**

In July 2022, while the FOMB and the Government were still negotiating the Final Stipulation, including the list of positions that would be offered early retirement, Plaintiffs received a letter from the Retirement Board stating that their positions were deemed not essential and that they would be able to proceed to early retirement as per Act 80. [*Docket No. 1 at ¶ 11*]. Subsequently, on October 6, 2023, with the FOMB-Government negotiations still ongoing, Plaintiffs received a letter from the DNER stating that the FOMB had determined that their positions were essential, and, thus, Plaintiffs "could not retire pursuant to Act 80" [*Id.*]. When the Court approved the Final Stipulation, none of Plaintiffs' positions were included on the list for which early retirement was available.

On October 1, 2024, Plaintiffs filed the present Complaint, alleging that Act 80-2020 "provided [*them*] with a property right, to wit, take early retirement at 50% of their present

salary." [*Id. at ¶ 16*]. The Complaint maintains that the Government "illegally agreed to stop putting in effect Act 80 in its entirety" and that the "December 2021 and September 2023, coupled with the letter of July of 2022 … created a property right for them protected by the 5th and 14th Amendment Due Process clause." [*Id.*]. And the Complaint contends that "[a]t some point between July 2022 and October 2023" Defendants "conspired and decided, for reasons unknown, not to allow Plaintiffs to take early retirement." [*Id. at ¶ 12*]. Plaintiffs assert that since Act 80-2020 and the stipulations vested upon them a property right to an early retirement, they had a pre- and post- deprivation right to "be heard on whether their position was essential or any other reason to deny their request to take early retirement." [*Id. at ¶ 18*].

It is based on these allegations that Plaintiffs make their claims for damages for alleged violations of their right to due process under 42 USC § 1983. Among the damages sought, Plaintiffs request the cash equivalent of the amount that they would have received under the early retirement program of Act 80-2024. In other words, Plaintiffs seek to bypass and collaterally attack the judicial determinations made by the Title III Court in Adversary Proceeding 21-00119-LTS. According to Plaintiffs, the same set of facts upon which they hinge their federal law claim also give rise to their state law claim under Puerto Rico's tort statute.

## IV.    ARGUMENTS

This court should dismiss the complaint for failure to state a claim, as it is devoid of sufficient factual matter that, if accepted as true, would state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570). Threadbare recitals and conclusory statements are all the complaint of caption provides. It is often squarely contradicted by documents incorporated into the complaint and/or of which the Court may take judicial notice.

A.      **Elements of a § 1983 Claim.**

"[Section] 1983 is not itself a source of substantive rights,' but merely provides a method for vindicating federal rights <u>elsewhere conferred</u>.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (Emphasis supplied). In other words, "Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights under color of state law." *Alston v. Speigel*, 988 F. 3d 564, 574 (1st Cir. 2021). "To bring a successful section 1983 action, appellants must establish two elements: (1) the conduct complained of was carried out under color of state law and (2) this conduct deprived [*claimants*] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Macone v. Town of Wakefield*, 277 F. 3d 1, 9 (1st Cir. 2002*); Chiplin Enters. v. City of Lebanon*, 712 F.2d 1524, 1526-27 (1st Cir. 1983). Conversely, "[t]o state a claim under section 1983, [*Plaintiffs*] must plead that [*they were*] deprived of a constitutional or federal right, that a causal connection existed between [*Defendants'*] actions and the deprivation of that right, and that [*Defendants'*] actions constituted state action." *Id.*

"In determining whether a constitutional deprivation has occurred, courts must examine whether the defendant was under any obligation to the particular plaintiff. The question of the <u>existence of such a duty</u> is an issue of law." *Dollars v. Haralson County*, 704 F. 2d 150, 1543 (11th Cir. 1983) (Emphasis supplied). A person deprives another of a constitutional right, "within the meaning of § 1983, if he [*or her*] does an affirmative act, participates in another's affirmative act, <u>or omits to perform an act which he is legally required to do</u> that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (Emphasis supplied). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to

inflict' constitutional harms." *Id.*

### B. Neither Act 80 nor the Adversary Proceeding stipulations provided Plaintiffs with a protected property interest, thus, they cannot claim they were deprived of an acquired right, be it substantive or procedural.

Plaintiffs assail, on constitutional grounds, both the procedures or lack thereof as to their request to take early retirement and the decision itself not allowing them to take early retirement pursuant to Act 80. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011). Due process is classified into two broad categories: substantive and procedural.

"The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006)(citing *Daniels v. Williams,* 474 U.S. 327, 331 (1986). However, it does not "serve as a means of constitutionalizing tort law so as to 'impos[e] liability whenever someone cloaked with state authority causes harm.'" *Pagán*, 448 F.3d at 32(citing *County of Sacramento v. Lewis,* 523 U.S. 833, 848 (1998). "The plaintiff bears the burden of showing that the challenged actions were 'so egregious as to shock the conscience.'" *González-Droz,* 660 F.3d at 16(citing *Pagán,* 448 F.3d at 32).

Under the procedural component of the due process, the plaintiff "must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [*him or her*] of that interest without constitutionally adequate process." *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006) (alterations, internal quotation marks, and citations omitted). The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": "To have a property interest in

a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005)(citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)) .

Property interests are created by a source independent of the Constitution, such as state law. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. at 756 (citing *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (quoting *Roth, supra,* at 577) (providing that property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source," like state law); *see also Phillips v. Washington Legal Foundation,* 524 U.S. 156, 164 (1998)). State law must establish and define the contours of that benefit. *Roth*, 408 U.S. at 577.

The basic guarantee of procedural due process is that "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). No rigid taxonomy exists for evaluating the adequacy of state procedures in each case; rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Under the Laws of Puerto Rico, retirement benefits are "a final and well-earned compensation earned by the public employee who honoring a vocation of service, which in [*sic*] many occasions entails sacrifice and renunciation of material properties, devotes the years of productivity of his life to the common welfare. Its purpose is to provide a minimum income for the sustenance of the pensioner." *Román Mayol v. Tribunal Superior*, 101 DPR 807, 811 (1973), 1 P.R. Offic. Trans. 1095 (Official translation). While the Supreme Court of

Puerto Rico has held that an employee has a property right in its future retirement, "<u>before an employee retires, the State may amend the terms of the retirement system</u>, provided that such amendments are reasonable and further the actuarial solvency of the system." *Trinidad Hernández v. ELA*, 188 DPR 828 (2013) (emphasis supplied).

None of Plaintiffs in this case took early retirement pursuant to Act 80 [*see Docket No. 1 at ¶ 13*] nor retired, period, To the contrary, they all continue to be DNER employees. [*See Id. at ¶ 3*]. Additionally, none of the Defendants altered any of Plaintiffs' alleged rights under Act 80. This is because, *first*, the Title III Court nullified Act 80-2020 in a lawsuit filed by the FOMB; and *second*, none of the Defendants in this case were a party to that action or played any role in the negotiations that led to Act 80's nullification. Therefore, any property right which Plaintiffs may have aspired to acquire pursuant to Act 80 was suspended or eliminated by the Title III Court. All that Plaintiffs can claim is the mere expectation to potentially be able to participate in the early retirement program under Act 80, contingent on the outcome of the negotiations between the FOMB and the Government in the adversary proceeding.

Substantive state law changes in retirement benefits are analyzed under the acquired rights theory. "[T]the theory of acquired rights prohibits the retroactive application of a law when this affects legal relationships existing before the validity of the new law, which were born on the basis of the previous legislation." *Kenyon v. Cedeño Rivera*, 47 F. 4th 12, 27 (1st Cir. 2022), quoting *Pérez López et al. v. CFSE*, 194 DPR 314 (2015). As in cases involving a change of law by legislation, this action entails a change of law flowing from negotiations between different Government entities in the context of a Title III debt adjustment. Hence, the acquired rights theory applies the same. Under the acquired rights theory, a person acquires a right when "the affected parties rested on the rule of law, <u>and the rights entered the patrimony of the subjects involved</u>." *Kenyon v. Cedeño Rivera*, 47 F.

4th 12, 27 (1st Cir. 2022) (Emphasis supplied), quoting *Consejo Titulares v. Williams Hosp.*, 168 DPR 101, 108 (2006). An example of such an acquired right regarding retirement benefits could be a pension that has become due. *Kenyon v. Cedeño Rivera*, 47 F. 4th 12, 27 (1st Cir. 2022). Because, as stated by the Supreme Court of Puerto Rico, "[a]n acquired right is a consummated situation..." *Dominguez Castro v. ELA*, 178 DPR 1, 69; 78 P.R. Offic. Trans. 1 (2009). Here, the allegations reflect that whatever early retirement expectation Plaintiffs may have had, such expectation was far from consummated.

As previously mentioned, Act 80-2020 was judicially invalidated on December 28, 2021. As per the Title III's Order, Act 80-2020 was held to be null and void *ab initio,* such that Plaintiffs cannot rest on Act 80-2020 to argue that they were ever entitled to any retirement benefits thereunder.  Nonetheless, Plaintiffs allege that the alleged conspiracy occurred "[a]t sometime between July 2022 and October 2023" [*Docket No. 1 at ¶ 12*]. Even assuming, arguendo, that these assertions are true for the sole purpose of the Motion to Dismiss, the alleged deprivation occurred after Act 80-2020 was invalidated. At that point in time, Plaintiffs had no right to an early retirement, let alone a constitutionally protected right. Furthermore, the Final Stipulation between the FOMB and the Government was not approved by the Title III Court until March 22, 2024. In other words, the Final Stipulation which allowed certain Retirement Program participants to have an early retirement did not exist when the alleged conspiracy occurred. By their own admission, Plaintiffs were all notified in October 2023 that their position within the DNER could not be eliminated and, thus, they would not be eligible to pursue an early retirement under the stipulation being negotiated between the FOMB and the Government. [*See Docket No. 1 at ¶ 12*].

Article 3 of the Civil Code defines law as all norms, regulation, ordinance order or decree issued by a competent authority of the State. *31 LPRA § 5313*. An act is binding once enacted and published as prescribed by the statute itself. Art. 7 Civ. Code, *31 LPRA §*

*5321*. A judicially invalidated law --declared null and void *ab initio* and, therefore, having no legal effect from inception-- is simply not a binding source of law and, thus, cannot serve to create property rights protected under the Constitution of the United States.

In the same manner, interim stipulations entered by the Government with the FOMB during negotiations cannot create rights as to third parties, particularly when those interim stipulations included no provision directed at or for the benefit of Plaintiffs as DNER employees. Mere expectancy of potential retirement benefits is not a constitutionally protected acquired right. *Kenyon v. Cedeño Rivera*, 47 F. 4th 12, 27 (1st Cir. 2022) ("[M]ere expectations do not create an acquired right, and an acquired right cannot be the set of powers that the previous law allowed citizens to exercise."). Based on the facts alleged and the record before this Court, particularly as set forth in the Title III docket, Plaintiffs did not even have an expectancy of potential retirement benefits based on the interim stipulations because they were silent as to the Plaintiffs' positions at the DNER. In fact, the Final Stipulation made abundantly clear that "Participation in the partial implementation of Act 80 is solely and exclusively limited to Act 80 Entities' employees that are included in the final list of Estimated Positions as accepted by the Oversight Board. Non-participating employes of Act 80 Entities and all other Government employees shall not have any right to participate in the partial implementation of Act 80." [*Exhibit 3 at item VII*] (Emphasis added).

The plaintiffs claim that Defendants' "acts and omissions of due process denial and lying to Plaintiffs as to who took the decision not to allow them to take early retirement pursuant to Act 80 and the aforesaid stipulations are shocking to the conscience in violation to the substantive due process clause". [*Docket No. 1 at 9, ¶24*].  Defendants take issue with this claim out of hand.  Plaintiffs were all notified in October 2023 that their position within the DNER could not be eliminated. [*See Docket No. 1 at ¶ 12*]. Therefore, they would not be eligible to pursue an early retirement under the stipulation being negotiated between the

FOMB and the Government.

Neither Defendants' actions nor the result of those actions (the denial of early retirement under the scenario of an already judicially invalidated Act 80-2020—since December 28, 2021—and the Final Stipulation that was not approved by the Title III Court until <u>March 22, 2024</u>) remotely approach the level of uncivilized and shocking to the conscience per a substantive due process rubric. *González-Droz*, 660 F.3d at 16 (explaining that "[t]o sink to this level, the challenged conduct must be "truly outrageous, uncivilized, and intolerable.") (citing *Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir.1999)). Thus, the Complaint should be DISMISSED as it fails to plead a procedural and substantive due process claim upon which relief can be granted.

**B.    Plaintiffs' Conspiracy Theory Fails.**

With respect to a claim of a conspiracy, "[a] civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results [*sic*] in damage.'" *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990). Plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Yet, as previously mentioned, the Complaint is devoid of any specific facts of the alleged conspiracy, especially with respect to the Individual Defendants.

The Complaint concedes that the Government implemented the stipulations with the FOMB through two circular letters issued by the Retirement Board and the OGP, Circular Letters 2023-01 and 2024-02 [*Docket No. 1 at ¶ 10*]. Plaintiffs make no allegation that Defendants breached or otherwise deviated from the procedure laid out in the circular letters. Yet, Plaintiffs conclude that Mrs. Rodríguez Vega was the "final policy maker" that, in conspiracy with others, including Mrs. Miranda Maisonave, took the decision not to allow

Plaintiffs to take early retirement …" [*Id. at ¶ 17*]. Plaintiffs' conclusion is *non sequitur*.

Whether or not officials are policy makers is not a factual issue, but a question of law that calls for the interpretation of state law. *Welch v. Ciampa*, 596 F. 3d 38, 55 (1st Cir. 2010). "This determination requires a showing that a deliberate choice to follow a course of action was made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id at 55-56*. If Plaintiffs admit that the implementation of Act 80-2020 was implemented by the Retirement Board and OGP's circular letters, and Plaintiffs do not complain that the Defendants deviated from the norms established in such letters, it is an illogical conclusion and erroneous to claim that they were policy makers or that they conspired to injure Plaintiffs. Put differently, Plaintiffs do not have a plausible conspiracy claim against the Defendants if the implementation of the rules or guidelines was made by another (third parties) and Defendants simply followed such rules.

Regarding the existence of Defendants' "duty" to act, Plaintiffs merely argue that they had a property interest in the early retirement program pursuant Act 80-2020 or the Title III Court-approved stipulations in the adversary proceeding. Still, Plaintiffs recognize that early retirement under either the invalidated Act 80-2020, or under the subsequent stipulations, <u>is contingent on the uncertain event that the position they currently hold is deemed as not essential for the operation of the DNER</u>. [*Docket No. 1 at ¶ 18*]. So is their claim to injury. Despite the above, they allege that because a property right was acquired (which Defendants deny) the Defendants had a duty to provide a pre-depravation and post-depravation hearing. Plaintiffs' legal claim to a duty to act by Defendants is legally untenable.

The Complaint references the case of *Mathews v. Eldrige*, 424 U.S. 319 (1976), as the source of Defendants' duty to provide a "deprivation" hearing. Plaintiffs' reliance on this case is misleading. The *Eldrige* case behooves a person receiving social security benefits

for disability. These benefits were terminated without a hearing. In light of these facts, Eldrige sued in federal court alleging that he was deprived of his disability benefits without due process. While the Supreme Court recognized that some form of hearing is required before an individual is finally deprived of a property interest, it ruled that no such hearing was necessary in the Eldrige case. The Supreme Court reasoned that "due process, unlike some legal tiles, is not a technical conception with a fixed content unrelated to time, place and circumstances. *Id.* at 334. Additionally, to determine whether a hearing is necessary courts must determine if the administrative procedure available to plaintiff is sufficient. *Id.*

In this case, the alleged conspiracy occurred <u>after</u> Act 80-2020 was invalidated. If there is no law in place, there is no administrative remedy that any of the Defendants could have provided Plaintiffs in view of the fact that Act 80-2020 was not enforceable and the FMOB and the Government had not reached a final stipulation. Furthermore, as a matter of law, Plaintiffs had no legally protected right to the potential outcome of negotiations that had not materialized, nor approved by the Title III Court.

### C.    Defendants are shielded by Qualified Immunity.

Qualified immunity is a judge-made doctrine created to limit the exposure of public officials against claims for damages, thereby fostering the effective performance of discretionary functions in the public sector. *Harlow v. Fitzgerald*, 457 U.S. 800, 807(1982). The scope of this doctrine is broad, but not infinite. It protects all but "the plainly incompetent [*and*] those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This limitation has been interpreted to hold that the doctrine does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful. *Davis v. Scherer*, 468 U.S. 183, 193 (1984). This "objective reasonableness" standard of conduct is "measured by reference to **clearly established law**." *Id.* at 191 (Emphasis supplied). "No other "circumstances" are relevant to the issue of qualified immunity. *Id.* At the time of the

18

alleged conspiracy (July 2022 – October 2023), the only sources of law regarding the subject matter of early retirement under the invalidated Act 80-2020 were the interims stipulations approved by the Title III Court and the Circular Letters 2023-02 and 2024-02 enacted in furtherance of the stipulations.

The Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 243- 244 (2009), established a two-prong test to guide courts as to the application of qualified immunity. Under this test the court must first ask if the facts alleged by the plaintiff show that the conduct of the public officials violated a constitutional right. *Haley v. City of Boston*, 657 F. 3d 39, 47 (1st Cir. 2011); *Maldonado v. Fontanes*, 568 F.3d 263, 268-269 (1st Cir. 2009). The second prong in the analysis requires the Court to determine whether the constitutional right that was violated was **clearly established** at the time of the alleged violation. *Haley*, 657 F.3d at 47; *Maldonado*, 568 F.3d at 269; *Limone v. Condone*, 372 F.3d 39, 44 (1st Cir. 2004). The salient question is whether the state of the law at the time gave a defendant "clear notice that what he was doing was unconstitutional." *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011). Unlawfulness must be apparent at the time of the alleged violation "in the light of pre- existing law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Under the second step of the analysis, the defendant is entitled to qualified immunity if objectively reasonable officials in the defendant's position would believe that his or her conduct was lawful in light of clearly- established law. *See Pearson*, 555 U.S. at 243- 244 ; *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir. 2002). The reasonableness of the inquiry is also a legal determination. *Id.* In the end, the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was "apparent" when undertaken. *Limone*, 372 F.3d at 44 (quoting *Anderson*, 483 U.S. at 640).

Here, as discussed above, there was no unlawful conduct at all because Plaintiffs never had an established constitutional right to early retirement. (*See subsection "A", pp.*

*10-15, supra*). Indeed, Plaintiffs have not pleaded that any of the Defendants' conduct was an "apparent" violation of a constitutional right. The adversary proceeding before the Title III Court is far from the average case, where a statute is invalidated but subject to future ongoing negotiations. This is a matter of first impressions within this jurisdiction as a result of the "awkward power-sharing arrangement" between the Government and the FOMB set up by PROMESA. *See Roselló-Nevares v. Fin. Oversight & Mgmt. (In re: Fin. Oversight & Mgmt. Bd.)*, 330 F. Supp. 3d 685, 701 (1st Cir. 2018). The only established clear law here are the various stipulations approved by the Title III Court in the adversary proceeding, and the two circular letters issued by the Retirement Board and OGP. Plaintiffs, however, do not allege that Defendants breached or otherwise failed to follow such law. Consequently, Defendants are shielded by qualified immunity and, thus, the complaint should be DISMISSED.

> **D.    Plaintiffs fail to plead a state law tort claim against the Individual Defendants**

In the Complaint, Plaintiffs invoked the supplemental jurisdiction of the court to entertain their local claims per Article 1536 and 1540 of the Puerto Rico Civil Code, P.R. Laws Ann. §§ 10801 and 10805, tit. 31. (Docket 1 at 10, ¶27).  The Judicial Improvement Act of 1990 codified the "pendant" or "ancillary" jurisdiction under the name of "supplemental jurisdiction", allowing the courts to decline to exercise supplemental jurisdiction, among other reasons, if "the district court has dismissed all claims over which it has original jurisdiction". *See* 28 USC 1367(c); *Rodríguez v. Doral Mortgage Corp.*, 57 F. 3d 1168, 1175-117 (1st. Cir. 1995).  Absent a valid federal claim, the dismissal without prejudice of the pendent state-law claims follows.

In the alternative, dismissal ensues after an assessment of the merits of the case. Article 1536 of the Civil Code, Puerto Rico's current tort statute, provides that a person who

by fault or negligence causes harm or damage to another, is obligated to compensate the aggrieved person. 31 LPRA § 1537. Under Puerto Rico law, a plaintiff bringing a tort claim must show "(1) an act or omission resulting from fault or negligence; (2) damages; and (3) a causal connection between the act or omission and the injuries." *Colon v. Blades*, 717 F. Supp. 2d 175, 185-86 (D.P.R. 2010). The same reasons discussed in the previous sections warrant dismissal of the state law claim. The Complaint fails to identify a source of law that imposed on Defendants a duty to act as Plaintiffs allege. Without a duty, there can be no tortuous action, specifically when Plaintiffs do not even allege that Defendants breached any disposition of Act 80-2020 or the Circular Letters that ensue the interim stipulations in the joint informative motion between the FOMB and the Government.

## V.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE TITLE III COURT.

While federal courts have a general duty to exercise their jurisdiction, *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), they may abstain from hearing cases under certain circumstances, including out of comity for sister courts. *See New Eng. Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F. 3d 61, 69 (1st Cir. 2002). This case presents a textbook example of circumstances where abstention is appropriate.

A typical motion for abstention, the *Colorado River* abstention doctrine, requires weighing six factors as the core of this brand of jurisdictional analysis. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991). To determine whether the required circumstances exist, a district court must consider: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; 4) the order in which the forums obtained jurisdiction, (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties.

*Id.* The list, however, is not exhaustive. *Id.* Moreover, "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against the exercise is required." *Id.*

In this case, the Title III Court already has jurisdiction over the subject matter of Act 80 and the Final Stipulation, and that Court specifically preserved its jurisdiction to hear future disputes concerning those matters. Additionally, while the Title III Court is part of the District Court of the United States for the District of Puerto Rico, the Title III Court exclusively deals with all things PROMESA-related, including the debt adjustment case of, among others, the Retirement System. Moreover, this action will require the court to interpret the extent and scope of the Title III Court's prior orders concerning Act 80-2020, including the Final Stipulation. This necessarily risks having inconsistent judgments on the same subject matter.

Furthermore, abstaining from jurisdiction here and allowing this dispute to be heard in the Title III Court would promote judicial efficiency and preserve scarce judicial resources. The Title III Court has had jurisdiction over matters concerning Act 80 for nearly three years. In that time, it thoroughly familiarized itself with the Act, the parties' negotiations to resolve their dispute over the Act, and the Final Stipulation that will control Plaintiffs' claims in this case. Thus, this Court should abstain from hearing this dispute and transfer it to the Title III Court, where it clearly belongs.

The Title III Court is not only familiarized with the subject matter of the stipulations entered regarding Act 80 but is also the court that oversees the reorganization and execution of the confirmed Title III Debt Adjustment Plan for the Retirement System. This weighs heavily in favor of abstention or the transfer to the Title III Court. As previously mentioned, as participants of the Retirement System seek, under the façade of a civil rights claim, to

collaterally attack a final order of the Title III Court and reap the benefits of the Final Stipulation when the Title III Court's order specifically prohibited. The Final Stipulation approved by the Final Stipulation states that "[n]on-participating employees of Act 80 Entities and all other Government employees [*such as Plaintiffs*] shall not have any right to participate in the partial implementation of Act 80." [*Exhibit 3 at 12, item VII*] (Emphasis supplied). Thus, assuming jurisdiction in this case necessary risks interfering with a Final Order of a sister court. Consequently, Defendants submit that abstention is warranted and that the instant case should be transferred to the Title III Court.

A final note as a matter of fact, in USDC-PR case No. 24-1273-CVR, a case filed by the same counsel as for the Plaintiffs here, with very similar allegations and defenses as the ones raised by the parties in the present complaint, that sister Court, on January 22, 2025, at Docket No. 30, issued "Opinion and Order" transferring that case to the Title III Court.

## VI.   CONCLUSION

The present case has no factual basis for which relief can be granted. Plaintiffs' plea for relief is based on the conclusory allegation that Act 80-2020 and the interim stipulations approved by the Title III Court granted them a constitutionally protected right. Yet, as previously discussed, Plaintiff's legal conclusion is erroneous. There are no facts to establish that Defendants conspire against them. To the contrary, from the pleadings, the Title III approved interim stipulations, and circular letters show that any action or omission by Defendants was in furtherance of the applicable law directed to protect the positions they hold, not acts against Plaintiffs. Therefore, the Complaint should be DISMISSED pursuant to Rule 12(b)(6).

In the alternative, Judge Swain, as the presiding Title III Court, ruled that that Retirement System participants such as a Plaintiffs "[shall not have any right to participate in the partial implementation of Act 80" [*Exhibit 3 at 12, item VII*] (Emphasis supplied), and

"retained subject matter jurisdiction to enforce the terms of this Final Stipulation" [*Exhibit 1 at 5, ¶ 9*]. This action therefore brings frivolous claims attacking a sister court's order in the wrong court. Any attack to such judicial decree must be resolved by the Title III Court, thus, Defendants move the Court to abstain or otherwise transfer the case to the Title III Court. That way the judicial economy policy is upheld and there is no risk of inconsistent decisions on the same subject matter. Defendants, therefore, move the Court to abstain from this case or that the case be reassigned to Judge Swain for resolution consistent with her March 22, 2024, Order. If the Court determines that abstention or transfer is unwarranted, Defendants move the Court to dismiss.

WHEREFORE, Defendants hereby move the Court to DISMISS the complaint for the reasons stated herein pursuant Fed. R. Civ. P. Rule 12(b)(6), for failure to state a claim for which relief can be granted, or, in the alternative, abstain from the above captioned case and transfer the same to the Title III Court, where it rightfully belongs.

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court, using CM/ECF system, which will send notification of such filing to all parties and attorneys of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on this 12TH day of March 2025.

**JANET PARRA MERCADO**
Designated Secretary of Justice

**TANIA L. FERNÁNDEZ MEDERO**
Deputy Secretary of Civil Litigation

**SUSANA I. PEÑAGARÍCANO BROWN**
Interim Director of Federal Litigation and
Bankruptcy Division

**s/ Rafael B. Fernández Castañer**
USDC No. 225112
P.R. Department of Justice
Federal Litigation Division
P.O. Box 9020192
San Juan, PR  00902-0192
Tel.: (787) 721-2900, x-1423, 22, 21
Email: rfernandez@justicia.pr.gov