# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI URRUTIA, in his official capacity as Governor of Puerto Rico; THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; LUIS M. COLLAZO RODRÍGUEZ, in his official capacities as Administrator of the Retirement System for Employees of the Government of Puerto Rico and Executive Director of the Government of Puerto Rico Retirement Board; and JUAN C. BLANCO URRUTIA, in his official capacity as Director of the Office of Management and Budget,<br><br>Defendants. | Adv. Proc. No. 21-00119 in 17 BK 3283-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**FINAL STIPULATION CONCERNING ACT 80 OF 2020 AND
JOINT RESOLUTION 33 OF 2021**

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), Governor Pedro Pierluisi Urrutia (the "Governor"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (the Governor and AAFAF are, together, the "Government"), and the Municipal Revenues Collection Center ("CRIM") respectfully submit this final stipulation regarding an agreement for the partial implementation of Act 80 (the "Final Stipulation") consistent with paragraph 14, items (a) through (j), of the July 22, 2022 Order ("July 22 Order") (ECF No. 13) and the *Interim Stipulation and Order Concerning Act 80 of 2020 and Joint Resolution 33 of 2021* (the "Interim Stipulation") (ECF No. 39).

A. **Case Background**

1. On December 20, 2021, the Oversight Board filed the above-captioned adversary proceeding, seeking to have Acts 80, 81, and 82 of 2020 ("Act 80," "Act 81," and "Act 82," respectively, and together the "Acts") and Joint Resolution 33 of 2021 ("JR 33") enjoined and nullified as violative of numerous provisions of PROMESA. ECF No. 1. The Oversight Board alleged, among other things, that the Acts sought to alter the Commonwealth's pension regime in a manner inconsistent with the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico (as amended, the "Plan"). Case No. 17-BK-3283-LTS, ECF No. 19784.

2. After the Oversight Board filed the complaint in the above-captioned adversary proceeding, the Oversight Board and the Government engaged in discussions to resolve the dispute.

3. On December 27, 2021, the Oversight Board, the Government, and the Office of Management and Budget ("OMB") filed a stipulation and proposed order (ECF No. 5) resolving the adversary proceeding subject to Court approval.

4. On December 28, 2021, the Court approved the stipulation[2] and issued an Order (the "December 28 Order") ordering the Oversight Board and the Government to undertake certain actions within specified time periods and stating that "[t]he Court's approval or 'SO ORDERING' of this agreement shall invalidate JR 33 and Acts 80, 81, and 82 pursuant to PROMESA, including as significantly inconsistent with the certified fiscal plan, as of the enactment date for each of JR 33 and Acts 80, 81, and 82, except as provided for in paragraph 3 of this agreement. Upon Title III Court approval or 'SO ORDERING' of this agreement, the Oversight Board's complaint shall be dismissed with prejudice" (the "Act 80 Invalidation"). ECF No. 6 at ¶ 3 and 4.

5. On February 15, 2022, the Oversight Board and the Government filed an informative motion requesting an additional 120 days (until June 11, 2022) to satisfy their respective obligations under paragraph 3 of the December 28 Order. ECF No. 8.

6. On June 11, 2022, the Oversight Board and the Government filed an informative motion requesting a further extension of the deadline to satisfy their respective obligations under paragraph 3 of the December 28 Order. ECF No. 10. On June 15, 2022, the Court entered the informative motion as an order, extending the time for the parties to complete their respective analyses and engage in discussions concerning Act 80. ECF No. 11.

7. On July 21, 2022, the Oversight Board and the Government filed an informative motion regarding the parties' ongoing discussions and reflecting progress on reaching agreements,

---

[2] In the December 28 Order, the Title III Court retained "subject matter jurisdiction to enforce" the same. ECF No. 6 ¶ 9.

and proposed to work together to agree upon several items as a means of implementation for the Act 80 Early Retirement Program. ECF No. 12. On July 22, 2022, the Court issued an order (the "July 22 Order") requiring the Oversight Board and the Government work together to agree upon several open items set forth in paragraph 14 of the July 22 Order. ECF No. 13 at ¶ 14.

8. On August 25, 2022, the Oversight Board and the Government filed an informative motion requesting an extension of the deadlines for the Government to provide to the Oversight Board all documentation and information required under the July 22 Order, and for the Oversight Board and the Government to reach an agreement regarding the items in paragraph 14 of the July 22 Order. ECF No. 14.

9. On August 26, 2022, the Court issued an order extending the deadlines to September 22, 2022 for the Government to provide the Oversight Board all documentation and information concerning items (a) through (j) as identified in paragraph 14 of the July 22 Order and for the Oversight Board and the Government to agree upon each of the items identified in paragraph 14 of the July 22 Order. ECF No. 15 at ¶ 2-3.

10. On September 25, 2023, the Oversight Board and the Government filed the Interim Stipulation (i) confirming final agreement with respect to the items in paragraph 14 of the July 22 Order and (ii) establishing the next steps to reach a final agreement on the process for the partial implementation of Act 80 in a manner consistent with the December 28 Order and in conformance with paragraph 16 of the Interim Stipulation. ECF No. 39.

B.   **Final Stipulation**

11. The Oversight Board and the Government have reached final agreement on the partial implementation of Act 80 and JR 33 and stipulate to the following:

I. The Government and the Oversight Board agree that the following requirements under the Interim Stipulation to reach final agreement on the partial implementation of Act 80 have been met:[3]

A. The Government issued a circular letter, Circular Letter 2024-02, notifying each Act 80 Entity[4] of the requirement to issue a final certification that essential services will not be impacted by the partial implementation of Act 80;

B. The Government certified that the partial implementation of Act 80 for all affected Act 80 Entities will not adversely affect the delivery of essential services to Puerto Rico residents, which the Oversight Board has reviewed and accepted on February 23, 2024;

C. The Government provided a final list of Eliminated Positions, consisting of 1,130 Eliminated Positions which the Oversight Board has reviewed and accepted on February 23, 2024;

D. The Government provided a list of Flagged Vacant Positions, consisting of 806 Flagged Vacant Positions. The Oversight Board reviewed and accepted the list of Flagged Vacant Positions on February 23, 2024;

E. The Government provided the Government Roster identifying, by entity, all positions that will be maintained at each entity following the elimination of all the Eliminated Positions and the Flagged Vacant Positions. The Oversight Board reviewed and accepted the Government Roster on February 23, 2024;

---

[3] Capitalized terms not defined in this Final Stipulation shall have the meaning ascribed to them in the Interim Stipulation.

[4] The Association of Employees of the Commonwealth of Puerto Rico ("AEELA") was included as an Act 80 Entity Circular Letter 2024-02, but is no longer an Act 80 Entity due to AEELA's refusal to sign on to this Final Stipulation or otherwise agree to proposals to ensure cost savings. As such, their employees are not eligible to participate in the partial implementation of Act 80.

F. The Government submitted to the Oversight Board certain Act 80 internal controls, compliance procedures, and entity guidance which ensure that the Eliminated Positions will not be restored, recreated, or created within the Act 80 Entities. The Oversight Board reviewed and approved such materials on February 26, 2024;

G. As discussed in Section II, the Government submitted to the Oversight Board a Memorandum of Understanding and Agreement ("MOU") to be executed by the Government, and each of CRIM, the Office of Legislative Services ("OSL"), and the Office of the Comptroller of Puerto Rico ("OCPR"). CRIM, OSL and OCPR are exempt from the oversight and authorization by the Office of Human Resources Administration ("OATRH" for its Spanish acronym) and OMB, to establish Act 80 compliance procedures and applicable entity guidance to ensure that the Eliminated Positions are not restored, recreated, or created within the affected agencies and corporations. The Oversight Board reviewed and approved the MOU on February 26, 2024;

H. The Government submitted to the Oversight Board the Savings Calculations relating to the partial implementation of Act 80 and the Savings by entity by year with respect to the Eliminated Positions. The Oversight Board reviewed and accepted the Savings Calculations on February 26, 2024;

I. The Government submitted to the Oversight Board the Act 80 Contribution Schedule providing that Act 80 Funding will be deposited into the Commonwealth Plan of Adjustment Pension Reserve Trust, under the provisions of the Plan and Confirmation Order as discretionary and supplementary contributions, which are necessary to provide future funding of the cost related to the partial implementation of Act 80. The

Act 80 Contribution Schedule is attached hereto and will be published publicly on the Government of Puerto Rico Retirement Board's (the "Retirement Board") website no later than March 31, 2024;

J. Beginning with August 2024, and continuing each month thereafter through Fiscal Year ("FY") 2031, Hacienda will make a contribution to the Commonwealth Plan of Adjustment Pension Reserve Trust from the General Fund, equal to one-twelfth (1/12) of the total Act 80 Funding amount for the prior month's fiscal year (the "Monthly Amount"), for all entities listed in the Act 80 Contribution Schedule;

K. The Commonwealth's General Fund will receive reimbursement of the Monthly Amount from Final Invoiced Entities[5] through the existing process by which the entity is invoiced and submits its PayGo fees. Beginning with the month in which the first Act 80 Funding Monthly Amount is contributed in accordance with paragraph 11.I.J, the portion of the Monthly Amount associated with the Special Revenue Fund ("SRF") as identified in the Contribution Schedule for each such Final Invoiced Entity for the fiscal year will be added to that entity's PayGo fees (the "Act 80 Fee") and reflected on its monthly PayGo fee invoice.

L. The Final Invoiced Entities will be responsible for paying the Act 80 Fees (in addition to their standard PayGo fees), subject to the same payment timing requirements and conditions as standard PayGo fees, and the Retirement Board will use existing policies

---

[5] Invoiced Entities were defined in the Interim Stipulation to include the four non-Fiscal Plan entities impacted by Act 80 (CRIM, COSSEC, PRIDCO, and HTA) and the other Fiscal Plan entities that contribute PayGo fees to the Retirement Board. Entities with revenue sources from both the Commonwealth General Fund and Special Revenue Funds were assessed to determine the appropriate funding source for Act 80 Funding. The resulting agreed upon Contribution Schedule separately identifies the portion of Act 80 Funding that will be allocated to the Commonwealth General Fund and the portion of Act 80 Funding that will be invoiced from the SRF (updated to be identified as the "Final Invoiced Entities").

and responsibilities under Act 106-2017 related to monitoring PayGo fee compliance to ensure collection of the Act 80 Fees. Lack of compliance with respect to payment of PayGo fees by a Final Invoiced Entity will not lower the Contribution owed by the General Fund pursuant to paragraph 11.I.J. above.

M. The Government and Oversight Board agree that no later than January 31, 2025, Section 1.2.A. of the Guidelines for the Governance and Administration of the Puerto Rico Plan of Adjustment Pension Reserve Trust and Monitoring of Plan of Adjustment Pension Benefits (the "Guidelines") shall be amended to provide the Commonwealth Plan of Adjustment Pension Benefits Council the responsibility and authority to monitor the proper and timely payment of Act 80 Funding to the Pension Reserve Trust by the Commonwealth in accordance with the Final Order. The absence of amended Guidelines shall not constitute a basis for the Government or any Act 80 Entity not to comply with any of the terms of this Final Stipulation;

N. The Oversight Board has reviewed and accepted the Act 80 Contribution Schedule; and

O. The Oversight Board has received and approved the Retirement Board's proposed procedures for tracking and applying the PayGo Credits (the "PayGo Credit Procedures"). The PayGo Credit Procedures are set forth as follows:

1. PayGo Credits and Available PayGo Credits will be applied for the Final Invoiced Entities as described below until fully applied and will not be adjusted for interest or any returns on the Pension Reserve Trust.

2. To the extent that a Final Invoiced Entity is no longer responsible for payment of PayGo Fees at any point in the future (for example, due to the closure of an entity), any remaining PayGo Credits for the Final Invoiced Entity will be eliminated.

3. The Retirement Board and the Puerto Rico Department of Treasury shall confirm that the Final Invoiced Entities have completed their respective portions of the Act 80 Contribution Schedule and that they are current on

PayGo fees, which will signify that Final Invoiced Entities are eligible to access their PayGo Credits, subject to the additional conditions below:

    i.    PayGo Credits will be equal to the sum of the Act 80 Fees invoiced and collected from the Final Invoiced Entity as part of the PayGo Fees; and

    ii.    When a withdrawal is made by the Government from the Pension Reserve Trust (the "PayGo Withdrawal"), subject to the provisions of the Guidelines, an available PayGo Credit (the "Available PayGo Credit") will be determined for each entity based on the lesser of:

        a.    Each Final Invoiced Entity's pro rata share of the PayGo Withdrawal, based on the prior year's total PayGo payments to pensioners;

        b.    Any remaining PayGo Credit.

    iii.    The Retirement Board shall keep an accounting of all PayGo Credits and shall apply the corresponding Available PayGo Credits on the Final Invoiced Entities' PayGo Fees' invoices. For the avoidance of doubt, no Final Invoiced Entity shall be entitled to PayGo Credits above the sum of the Act 80 Fees invoiced and collected from the Final Invoiced Entity as part of the PayGo Fees.

4.    Beginning in fiscal year 2032, if withdrawals from the Pension Reserve Trust have not yet commenced, once the Retirement Board and the Puerto Rico Department of Treasury confirm the Final Invoiced Entities have completed payment of their respective portions of the Act 80 Contribution Schedule and that they are current on their respective PayGo fees, Final Invoiced Entities will have an opportunity to request PayGo Credits as follows:

    i.    A Final Invoiced Entity must demonstrate a financial need to OMB, or OMB's equivalent at the time.

    ii.    If OMB or its equivalent determines that sufficient documentation has been provided to demonstrate that there is a financial need, it shall direct the Retirement Board to apply a PayGo Credit to the Final Invoiced Entity's invoices for the coming year based on the smallest of the following:

        a.    1/12 of PayGo Fees for the current year;

        b.    1/36 of the original PayGo Credit; and

        c.    Any remaining PayGo Credit.

II. The Government has entered into MOUs with CRIM, OSL, and the OCPR, to establish an agreed upon monitoring process for, among other things, the creation hiring, filling, and reclassification of positions. Under the MOUs, each of these entities agrees to and shall provide all of the necessary information and documentation with respect to such entity's compliance with the requirements set forth in paragraph 16.VI. of the Interim Stipulation, including, among other things, to enable:

   A. OMB and OATRH to monitor compliance to ensure that the Eliminated Positions and the Flagged Vacant Positions will not be restored, recreated, or created within CRIM, OSL, and OCPR; and

   B. OMB and OATRH to provide the recurrent Semi-Annual Compliance Certificate and Semi-Annual Roster related to CRIM, OSL, and OCPR in a timely manner, as specified in paragraph 11.III.A-B below.

III. Recurrent Compliance Certification and Reporting Obligations

   A. Each year, no later than 20 calendar days after both June 30 and December 31, OMB shall provide to the Oversight Board a Semi-Annual Compliance Certificate for all of the Act 80 Entities; and

   B. Each year, no later than 20 calendar days after both June 30 and December 31, OMB shall provide to the Oversight Board an updated Semi-Annual Roster for all of the Act 80 Entities.

IV. Within 30 days of the entry of this Final Order, the Government shall submit a written request to the Oversight Board to revise the applicable budgets pursuant to section 202 of PROMESA to reflect the partial implementation of Act 80 consistent with the Final Order. The Oversight Board shall approve such revisions to the applicable budgets after

confirming compliance with the Interim Stipulation, this Final Stipulation, and the Final Order (such revised budgets, the "Amended Budgets"). The Amended Budgets shall reflect:

1. Adjustments for the elimination of salaries and benefits of all Eliminated Positions, in accordance with the Oversight Board and the Government's agreements on the allocation between the Commonwealth General Fund and Special Revenue Funds;

2. Any additional funds needed for liquidation of vacation and any other associated one-time costs;

3. An increase in PayGo for incremental Act 80 costs; and

4. An increase in budget for an allocation equivalent to the share of the Act 80 Contribution Schedule owed (Monthly Amount as described in paragraph I.J.).

V. By the end of fiscal year 2024, OMB and the Retirement Board will issue a circular letter to all Act 80 Entities, to inform them of the budget adjustments and their upcoming responsibilities related to the Act 80 Contribution Schedule.

VI. The Oversight Board and the Government agree that Act 80 and JR 33 may only be partially implemented in a manner that: (1) is not significantly inconsistent with the certified Commonwealth Fiscal Plan and the Commonwealth Plan of Adjustment confirmed by the Title III court on January 18, 2022 (*Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Case No. 17-bk-3283, ECF No. 19813),

(2) will not impair or defeat the purposes of PROMESA as determined by the Oversight Board, and (3) is consistent with the December 28 Order, the Interim Stipulation, and the Final Stipulation. Except as set forth in the Interim Stipulation and in this Final Stipulation, the Oversight Board and the Government agree that Act 80 and JR 33 are otherwise null and void, consistent with the December 28 Order.

VII. Participation in the partial implementation of Act 80 is solely and exclusively limited to Act 80 Entities' employees that are included in the final list of Eliminated Positions as accepted by the Oversight Board. Non-participating employees of Act 80 Entities and all other Government employees shall not have any right to participate in the partial implementation of Act 80.

VIII. An individual's participation in the incentivized retirement program under Act 80, as set forth in this Final Stipulation, waives the rights of any such Act 80 participant to any and all current or potential claims based on: (i) the employment relationship or termination of employment; or (ii) any action, if any, that he or she might take as a result of the partial implementation of the program. The effect of the waiver of such rights shall constitute *res judicata*.

X. The Government agrees not to implement, adopt, promote, or approve any executive order, rule, legislation, or regulation contrary to or inconsistent with the terms of this Final Stipulation ("New Legislation"). The Government further agrees to exercise all reasonable efforts to prevent, and shall abstain from promoting or seeking, any judicial determination that is contrary to or inconsistent with the terms of this Final Stipulation.

XI. CRIM agrees not to take any action that is contrary to or inconsistent with the terms of this Final Stipulation. Furthermore, CRIM agrees that this Court shall retain subject matter

jurisdiction to enforce the terms of this Final Stipulation and, upon its entry, the Final Order, including by exercising jurisdiction over it as a party to this Final Stipulation. CRIM, OSL, and OCPR consent to this Court's jurisdiction for all purposes related to this Final Stipulation and the Final Order and none will argue this Court lacks jurisdiction as a defense in any matter brought before this Court related to this Final Stipulation and/or the Final Order.

XII. Should any Act 80 Entity, including CRIM, OSL, and OCPR, violate, prevent, impede, or otherwise act inconsistently with the terms and requirements of this Final Stipulation, the Government shall enforce compliance to the fullest extent permitted by law.

XIII. Consistent with the December 28 Order, the Government agrees that this Court shall retain subject matter jurisdiction to enforce the terms of this Final Stipulation and, upon its entry, the Final Order. The Government agrees it will not request that this Court abstain from adjudicating any dispute related to the December 28 Order, the Interim Stipulation, this Final Stipulation or, upon its entry, the Final Order, including, but not limited to any dispute related to:

    i. New Legislation;

    ii. New Legislation that is significantly inconsistent with the applicable certified fiscal plan;

    iii. New Legislation that is violative of PROMESA; or

    iv. New Legislation that impairs or defeats the purposes of PROMESA, as determined by the Oversight Board[6].

---

[6] The Government and the Oversight Board agree that the Government will not use the terms of ¶ 11.IX to argue in other disputes that the absence of a similar jurisdictional provision indicates that this Court lacks jurisdiction over those disputes.

**WHEREFORE**, the Oversight Board and the Government request the Court to enter an order approving, and directing the parties to comply with, this Final Stipulation.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 26, 2024
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
carla.garcia@oneillborges.com

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Mark D. Harris (*pro hac vice*)
Hadassa R. Waxman (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
mharris@proskauer.com
hwaxman@proskauer.com

/s/ Timothy W. Mungovan
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899
Email: tmungovan@proskauer.com

[*Continued on Next Page*]

/s/ Guy Brenner
Guy Brenner (*pro hac vice*)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel: (202) 416-6800
Fax: (202) 416-6899
Email: gbrenner@proskauer.com

*Attorneys for the Financial Oversight and Management for Puerto Rico in its own right and as representative of the Commonwealth of Puerto Rico*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

**O'MELVENY & MYERS LLP**

*/s/ Peter Friedman*
John J. Rapisardi
Peter Friedman
Maria J. DiConza
Matthew P. Kremer
(Admitted Pro Hac Vice)
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
      pfriedman@omm.com
      mdiconza@omm.com
      mkremer@omm.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/ Pedro J Quiñones -Alvarez*
Pedro J Quiñones -Alvarez
USDC-PR 206401
Municipal Revenues Collection Center (Crim)
Legal Director
P.O. BOX 195387
San Juan, PR 00919-5387
E-mail: pquinones@crimpr.net

*Attorneys for Municipal Revenues Collection Center*

SO ORDERED.

Dated: March 22, 2024                        /s/ Laura Taylor Swain
                                             LAURA TAYLOR SWAIN
                                             United States District Judge