**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FRANCISCO J. TOLEDO-MÉNDEZ, *et al.*,<br><br>    **Plaintiffs,**<br><br>        v.<br><br>ANAIS RODRÍGUEZ-VEGA; DAMARIS MIRANDA-MAISONAVE,<br><br>    **Defendants.** | **CIVIL NO.** 24-1462 (RAM) |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants Anaís Rodríguez-Vega ("Rodríguez-Vega") and Damaris Miranda-Maisonave ("Miranda-Maisonave"), (collectively "Defendants") *Motion to Dismiss or Transfer to Title III Court* (the "*Motion*"). For the reasons outlined below, Defendants' *Motion* is **GRANTED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND[1]

On August 3, 2020, the Government of Puerto Rico enacted Act 80-2020 ("Act 80"), providing early retirement for qualifying non-essential public employees with 50% of their salary, rather than 38% and waiting until age 65. (Docket No. 1 ¶ 6). Plaintiffs, a group of seventy-six employees of the Natural Resources Ranger Corps (the "Ranger Corps") under the Department of Natural and

---

[1] Facts are adopted from the well-plead allegations of the *Complaint*.

Environmental Resources ("the Department" or "DRNA", Spanish acronym), allege that Act 80 applied to all Plaintiffs in the present case and that they could have retired pursuant to said Act. Id. On October 14, 2020, the Retirement Services Administration of the Commonwealth of Puerto Rico (the "Retirement Services Administration") and the Office of Management and Budget ("OMB") issued Circular Letter Num. 2021-01, to implement Act 80 and establish a period for employees to request early retirement. Id.

On December 20, 2021, The Financial Oversight Management Board ("FOMB") filed an adversary proceeding (Adv. Proc. 21-119) against the Government of Puerto Rico within the Title III process of the Commonwealth of Puerto Rico, Case No. 17-3283, to stop the implementation of Act 80. Id. ¶ 7. The Parties to Adv. Proc. 21-119 reached a stipulation, which was approved by Judge Laura Taylor Swain on December 28, 2021 (the "December 2021 Stipulation"), whereby they agreed to "endeavor to reach an agreement on a means of implementing the incentivized early retirement provisions set forth in Act 80 for certain employees where doing so would create savings above and beyond the level of savings required in the currently certified fiscal plan." Id. ¶ 8. Moreover, per its terms, the Court's approval of the December 2021 Stipulation would thereby otherwise "invalidate" Act 80 pursuant to PROMESA. Id.

Civil No. 24-1462(RAM)                                                    3

Accordingly, the Retirement Services Administration and OMB issued various circular letters to establish subsequent phases of implementation of Act 80. Id. ¶ 10. On July 22, 2022, Plaintiffs initially received a letter from the Retirement Board stating that their position was not essential and that they would be able to proceed to early retirement as per Act 80 (the "July 2022 Letter"). Id. ¶ 11; see also Docket No. 21-1. Thereafter, the Parties to Adv. Proc. 21-119 filed a new stipulation as approved by Judge Swain on September 25, 2023 (the "September 2023 Stipulation"). Id. ¶ 10. On October 5, 2023, Circular Letter 2024-02 was issued, establishing the second phase of the retirement program pursuant to Act 80. Id.

On October 6, 2023, Plaintiffs received a letter from the Secretary of the DRNA, co-defendant Rodriguez Vega, stating that the FOMB had determined that their position was essential and that they could not retire pursuant to Act 80. Id. ¶ 11. Following Plaintiffs' request for additional information, the FOMB sent them a letter in February of 2024 explaining that the Government of Puerto Rico determined which positions were non-essential and thus could be eliminated permanently to ensure both savings and that essential services are provided. Id.

On March 22, 2024, the FOMB and the Commonwealth of Puerto Rico filed a Final Stipulation in the Adv. Proc. 21-119 providing the positions that were eliminated in each agency (the "Final

Stipulation"). The list did not include Plaintiffs' positions and thus Plaintiffs were not able to take early retirement pursuant to Act 80. Id. ¶ 13.

On October 1, 2024, Plaintiffs filed their *Complaint* against Rodríguez-Vega and Miranda-Maisonave, the head of human resources department of the DRNA, alleging both procedural and substantive due-process violations under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and 1988. Id. ¶¶ 1, 4-5. Plaintiffs contend that Defendants, not the FOMB, conspired and decided not to allow Plaintiffs to take early retirement, thereby affecting their property rights without due process. Id. ¶ 12. Plaintiffs maintain that they had a property interest in the early retirement process established by Act 80 and were denied the opportunity to be heard before being deprived of said right. Id. ¶¶ 17-25. Furthermore, Plaintiffs included a claim under the general tort statute of the Puerto Rico Civil Code and seek both economic and emotional damages. Id. ¶¶ 26-184.

Defendants filed a *Motion* seeking to dismiss the case or transfer it to the Title III Court on March 12, 2025. (Docket No. 16). Defendants argue that neither Act 80, nor the stipulations in Adv. Proc. 21-119, provided Plaintiffs with a protected property interest, and thus they cannot claim that they were deprived of an acquired right without due process, be it substantive or procedural. Id. at 11-16. Defendants further maintain that they

are shielded by qualified immunity. Id. at 18-20. With regards to Plaintiffs' non-federal claims, Defendants assert that Plaintiffs fail to adequately plead a Puerto Rico law tort claim against the defendants. Id. at 20-21. In the alternative, Defendants request that the case be transferred to the Title III Court. Id. at 21-23.

Plaintiffs filed their *Opposition* on March 27, 2025. Therein, they maintain that Act 80, the stipulations in Adv. Proc. 21-119, and the June 2022 letter gave them a property right to early retirement that was not changed by an act of the legislature but by Defendants' determination that Plaintiffs' positions were essential. (Docket No. 18 ¶ 14).

## II.  APPLICABLE LAW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.,*

Civil No. 24-1462(RAM)                                                    6

non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted). The analysis for a Rule 12(b)(1) motion "is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." Cebollero-Bertran v. P. R. Aqueduct & Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021) (citation omitted).

## III. DISCUSSION

### A. Section 1983

Plaintiffs assert claims under 42 U.S.C. § 1983 ("Section 1983") alleging that Defendants violated their procedural and substantive due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quotations omitted). Therefore, "Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights under color of state law." Alston v. Spiegel, 988 F.3d 564, 574 (1st Cir. 2021) (quotation omitted). To succeed on a Section 1983 claim, a plaintiff must show: "(1) that the complained-of

conduct was committed under the color of state law, and (2) that such conduct violated [their] constitutional or federal statutory rights." Miller v. Town of Wenham Massachusetts, 833 F.3d 46, 51 (1st Cir. 2016) (citation omitted). The First Circuit has repeatedly held that Puerto Rico "is considered a state for section 1983 purposes." Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev., 421 F.3d 1, 7 (1st Cir. 2005) (citing Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir.2002)).

In the case at bar, Plaintiffs challenge the actions attributed to functionaries of the DRNA, an agency of the Puerto Rico Government. (Docket No. 1 ¶¶ 4-5). In their *Motion*, Defendants do not contest that they were acting under the color of state law but rather argue that (1) Plaintiffs failed to establish that they were deprived of an acquired right and (2) that Defendants are entitled to qualified immunity.[2] (Docket No. 16 at 11-16; 18-20). Thus, the Court must first address whether Plaintiffs have plausibly alleged that their federal constitutional rights have been violated.

**B. Fifth Amendment Due Process Claims**

In its relevant part, the Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life,

---

[2] "Qualified immunity is a doctrine that shelters government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

liberty, or property, without due process of law...." U.S. Const. amend. V. Crucially however, the Fifth Amendment Due Process "applies **only to actions of the federal government**—not to those of state or local governments." <u>Martinez-Rivera v. Sanchez Ramos</u>, 498 F.3d 3, 8-9 (1st Cir. 2007)(citations and quotations omitted)(emphasis added); *see also* <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Given that Plaintiffs do not allege that either of the Defendants are federal actors, their Fifth Amendment claims are hereby **DISMISSED WITH PREJUDICE.**

## C. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In the case at bar, Plaintiffs allege that both their substantive and due process claims were violated when they were deprived of early retirement benefits without the opportunity to be heard. (Docket No. 1 ¶¶ 16-25). "To establish a due process claim, substantive or procedural, [plaintiffs] must first establish a property interest." <u>Macone v. Town of Wakefield</u>, 277 F.3d 1, 9 (1st Cir. 2002).

To state a procedural due process claim under § 1983, "the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Clukey v. Town of Camden, 717 F.3d 52, 54-55 (1st Cir. 2013). On the other hand, to assert a valid substantive due process claim, plaintiffs "have to prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (citing Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir.2006); Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir.2005)).

Considering the above, the threshold inquiry is whether Plaintiffs have established a property interest to early retirement benefits. Property interests "are not created by the Constitution[,] [r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The Supreme Court has made clear that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [They] must have more than a unilateral expectation of it. [They] must, instead, have a legitimate claim of

> entitlement to it. It is a purpose of the
> ancient institution of property to protect
> those claims upon which people rely in their
> daily lives, reliance that must not be
> arbitrarily undermined.

Id.

"A statute will be found to have created contractual obligations 'when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.'" Maine Ass'n of Retirees v. Bd. of Trs. of Maine Pub. Emps. Ret. Sys., 758 F.3d 23, 29 (1st Cir. 2014) (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 17 n. 14 (1977). "Although the underlying property interest may be a creation of state law, whether that interest is tangible enough to merit the status of an entitlement protected by the Due Process Clause is a question of federal constitutional law." Jackson v. Russo, 495 F. Supp. 2d 225, 228 (D. Mass. 2007) (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978)). To evince that a "statutorily created benefit is a property interest, a person must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008) (quotations omitted).

Puerto Rico courts have previously held that retirement plans can give rise to property interests. See Perez Rivera v. Alemañy, No. 3:24-CV-01273-LTS, 2025 WL 2466476, at *9 (D.P.R. Aug. 27,

2025); Bayron Toro v. Serra, 19 P.R. Offic. Trans. 646, 649 (P.R. 1987) (noting that "a beneficiary of a retirement plan has a property interest of a contractual nature protected by the constitutional guarantee against impairment of contractual obligations[.]"). "Notwithstanding this general recognition, they have also held that the government "may amend the terms and conditions of the retirement, if such amendments are reasonable and seek to further the actuarial solvency of the system." Id. (quoting Bayron Toro, 19 P.R. Offic. Trans. at 660).

Plaintiffs claim that Act 80, coupled with the December 2021 Stipulation, the September 2023 Stipulation, and the July 2022 Letter, created a property right to early retirement. (Docket No. 1 ¶¶ 16, 22). This District evaluated, and rejected, nearly identical claims raised by similarly situated Puerto Rico Government employees in Perez Rivera v. Alemañy. 2025 WL 2466476, at *9-10. The Court agrees with the reasoning set forth in Alemañy and adopts it here.

First, as to Act 80, "the statute itself was not self-executing and Act 80 was invalidated prior to its partial implementation." Id. at 9. Pursuant to the December 2021 Stipulation, Act 80 was invalidated save for the fact that the FOMB and Government agreed to endeavor to reach an agreement as to who to implement Act 80 for certain employees. (Docket No. 1 ¶ 8). "Under such circumstances, Act 80 could not have created any

legitimate claim to property rights in early retirement benefits for Plaintiffs." Alemañy, 2025 WL 2466476, at *9 (citing Roth, 408 U.S. at 578) (finding no property interest in employment after expiration of fixed term of employment given that neither the contract, nor any state statute, rule or policy secured an interest or created a legitimate claim).

Similarly, the Court finds that collectively, the December 2021 Stipulation, the September 2023 Stipulation, and the July 2022 Letter "did not confer on Plaintiffs a property interest in early retirement benefits, because none of those documents constituted a final agreement between the parties." Id. at *10; "[I]ndeterminacy is not the hallmark of a duty that is mandatory. Nor can someone be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." Town of Castle Rock v. Gonzales, 545 U.S. 748, 763 (2005) (citations omitted)). Furthermore, per Supreme Court precedent "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Id., 545 U.S. at 756. As the Plaintiffs acknowledge, it was the Final Stipulation filed on March 22, 2024 in Adv. Proc. 21-119 that ultimately determined what positions would be eliminated and, consequently, which employees would be eligible for early retirement. (Docket No. 1 ¶ 13). Plaintiffs' positions were not included in this Final Stipulation and thus Plaintiffs were never entitled to early retirement. Because the

Civil No. 24-1462(RAM)                                                    13

*Complaint* failed to establish that Plaintiffs had a property interest in early retirement benefits, Plaintiffs were not entitled to a right to be heard, and the Court need not evaluate Plaintiffs' claims that Defendants conspired to deprive Plaintiffs of benefits without due process. Accordingly, Plaintiffs' due process claims pursuant to the Fourteenth Amendment are hereby **DISMISSED WITH PREJUDICE.**

### D. Puerto Rico General Tort Statute Claim

First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." <u>Borrás-Borrero v. Corporación del Fondo del Seguro del Estado</u>, 958 F.3d 26, 36 (1st Cir. 2020). Where, as here, the federal claims are properly dismissed, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See e.g.,* <u>Massó-Torrellas v. Municipality of Toa Alta</u>, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also*, <u>Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.</u>, 748 F.3d 387, 392 (1st Cir. 2014) (noting that where all federal-law claims are eliminated before trial, the balance of factors will weight towards declining to exercise jurisdiction over any remaining state-law claims).

Since Plaintiffs' federal claims are being dismissed at the pleadings stage, the Court declines to exercise supplemental

Civil No. 24-1462(RAM)                                                    14

jurisdiction pursuant to 28 U.S.C. § 1367(c) and all of Plaintiffs'
supplemental claims under Puerto Rico's general tort statute are
hereby **DISMISSED WITHOUT PREJUDICE.**

## IV.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS**
Defendants' *Motion to Dismiss* at Docket No. 16. Plaintiffs' due
process claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**
whereas Plaintiffs' damages claims pursuant to the Puerto Rico
general tort statute are **DISMISSED WITHOUT PREJUDICE.** Judgment of
dismissal shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 10th day of August 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge